# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 22-0042V**

| | |
|---|---|
| KATHLEEN TRUSKO,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br><br>Filed: October 14, 2026 |

*Jonathan Joseph Svitak, Shannon Law Group, P.C., Woodridge, for Petitioner.*

*Adam Nemeth Muffet, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION DISMISSING PETITION[1]

On January 12, 2022, Kathleen Trusko filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that as a result of an influenza ("flu") vaccine she received on August 13, 2019, she suffered a shoulder injury related to vaccine administration ("SIRVA") as defined by the Vaccine Injury Table (the "Table"). Petition (ECF No. 1) at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I conclude that Petitioner has not established by preponderant evidence that she suffered the residual effects or complications of such

[1]Because this decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

illness, disability, injury, or condition for more than six months after administration of the vaccine – the "severity requirement" applicable to all Program cases. It is therefore appropriate to dismiss this matter now, rather than transfer out of SPU for additional proceedings.

## I. Relevant Procedural History

The claim was initiated on January 12, 2022, and relevant medical records were filed through September 28, 2022. ECF Nos. 6, 13-14. On April 15, 2024, Respondent filed his Rule 4(c) Report contesting entitlement in this case on severity grounds and on SIRVA onset. Respondent's Report at 1, ECF No. 28. On July 8, 2024, I issued an Order to Show Cause setting a deadline for Petitioner to react to Respondent's objections, and submit any other material to prove that she has met the six-month severity requirement. On October 15, 2024, Petitioner filed a Response ("Resp.") along with an additional supplemental affidavit. ECF Nos 31-32. Respondent filed his own brief on November 15, 2024. ECF No. 33. This case is now ripe for adjudication.

## II. Relevant Medical History

### 1. Medical Records

Ms. Trusko was 66 years old when she received a flu vaccine in her left deltoid on August 13, 2019, at a CVS pharmacy. Exhibit ("Ex.") 2 at 3. While Ms. Trusko has an extensive medical history, it does not reveal any history of pain, injury, or dysfunction of her left shoulder. *See* Exs. 3-5, 10.

Sixteen days later (August 29, 2019), Ms. Trusko saw her primary care physician ("PCP"), internal medicine specialist Joseph Mangel, D.O. Ex. 10 at 16. Records from this visit are handwritten on a one page preprepared form and are largely illegible. *Id*. However, under the preprepared heading that reads "Chief Complaint and Duration," there is a handwritten notation reading "L Shoulder pain…". *Id.* The legible portions of this record make no reference to the cause or onset of Petitioner's left shoulder pain. *Id*.

On September 4, 2019, Ms. Trusko underwent an x-ray of her left shoulder. Ex. 3 at 34. The report indicated generalized osteoarthritis involving multiple sites but "[n]o significant abnormalit[ies]." *Id*.

On November 15, 2019, Ms. Trusko saw orthopedist Jeremy Close, M.D., with a "new complaint of left shoulder pain." Ex. 3 at 32. She reported "increasing discomfort over the summer" that she attributed to "moving her daughter and to a possible vaccine in July." *Id*. On examination of the left shoulder, Petitioner had full strength and her range

of motion was only slightly reduced in abduction. *Id*. The Neers and Hawkin impingent tests were both positive. *Id*. Ms. Trusko was assessed with “bursitis left shoulder, subacromial impingement left shoulder.” *Id*. Dr. Close noted, “I think she is mostly dealing with impingement syndrome. I do not think this is attributable from the vaccine that she received, but just more coincidental.” *Id*. At this visit, Petitioner received a steroid injection and was instructed to follow up in six weeks. *Id*. at 33.

Nearly four months later, on March 10, 2020, Ms. Trusko returned to Dr. Mangel with a complaint of sore throat and shortness of breath. Ex. 3 at 17. The records from this visit are again handwritten and largely illegible, and their legible portions make no mention of left shoulder pain or complications with Petitioner’s August 2019 vaccination. *Id*.

On May 29, 2020, Ms. Trusko returned to Dr. Mangel complaining of bilateral carpal tunnel syndrome in her hands. Ex. 3 at 18. The legible portions of this record make no mention of left shoulder pain or complications with Petitioner’s vaccination. *Id*.

On August 24, 2020, Ms. Trusko saw sports medicine specialist Phillip Motley, M.D., with a complaint of left knee pain. Ex. 5 at 33. Petitioner was evaluated and received a steroid injection in her left knee. *Id*. Records from this visit make no mention of left shoulder pain or complications with petitioner’s flu vaccination. *Id*. at 33-34.

On September 3, 2020, Ms. Trusko returned to Dr. Mangel with a complaint of lower back pain. Ex. 3 at 19. The legible portions of this record make no mention of left shoulder pain or complications from the August 2019 vaccination. *Id*. Petitioner underwent x-rays of her lumbar spine, sacrum, coccyx, bilateral hip, and pelvis to evaluate her complaints of lower back pain. Ex. 3 at 36.

On October 28, 2020, Ms. Trusko saw Dr. Mangel for treatment of bilateral carpal tunnel syndrome in her hands. Ex. 3 at 20. The legible portions of this record make no mention of left shoulder pain or complications with an earlier vaccination. *Id*.

Several months later (January 12, 2021), Petitioner saw orthopedic hand surgeon Mark Wang, M.D., with a complaint of bilateral hand pain. Ex. 5 at 30-32. She described the pain as “10/10” and noted that it wakes her at night. *Id*. at 30. Ms. Trusko was assessed with bilateral hand and trigger finger pain. *Id*. There is no mention of left shoulder pain or the relevant vaccination. *Id*.

On March 16, 2021 – now *16 months* after Ms. Trusko’s last complaint of left shoulder pain on November 15, 2019, and 18 months after the vaccination itself - Petitioner returned to Dr. Mangel for a “checkup.” Ex. 10 at 21. The records again are

largely illegible. In the top right corner of the record, there is a notation that appears to read "had flu shot in 2019 at CVS." *Id*. The legible portions of this record make no reference to left shoulder pain or the onset of left shoulder pain.

On March 23, 2021, Ms. Trusko underwent an MRI of her left shoulder. Ex. 3 at 30. The MRI report states:

> Moderate supraspinatus and infraspinatus tendinosis with high grade interstitial tearing at the function of the supraspinatus and infraspinatus tendons with probably tiny full-thickness perforation type component. 2. Moderate subscapularis tendinosis with interstitial tearing. Advanced tendinosis of the long head biceps tendon with interstitial tearing and medial subluxation into the torn fibers of the subscapularis tendon. 3. GH joint osteoarthritis with full-thickness cartilage loss at the inferior glenoid and humeral head.

Ex. 3 at 30. The report also noted a "[m]ild subacromial/subdeltoid bursitis." *Id.* at 31.

On March 29, 2021, Ms. Trusko saw orthopedic surgeon Joseph A. Abboud, M.D., regarding her left shoulder pain. Ex. 5 at 23. Petitioner reported a pain level of "6/10," and noted difficulty with both "sleeping [and] lifting object[s] above shoulder height." *Id*. She further reported that "she [had] noticed the onset of left shoulder pain since a flu shot in August 2019" and "continued to have persistent pain" since her steroid injection on November 15, 2019, with occasional numbness and tingling in her hand. *Id*. On examination, Petitioner exhibited no atrophy, swelling or obvious weakness; she also exhibited slight stiffness with limited motion and pain with impingement maneuvers and strength testing. *Id*. at 24. Dr. Abboud stated that: "[s]he has evidence of left shoulder rotator cuff partial thickness tearing and mild GH arthritis of her MRI findings which is clinically significant. The findings are not caused by the flu shot but may have initiated an inflammatory cascade making these findings more symptomatic." *Id*. At this visit, Petitioner received a second steroid injection. *Id*.

On May 13, 2021, and July 19, 2021, Ms. Trusko saw Dr. Motley for a follow-up visit concerning left knee pain and left lateral hip pain. Ex. 12 at 16-17, 14. The records from these visits make no mention of left shoulder pain. *Id*.

On October 7 and 26, 2021, Ms. Trusko returned to Dr. Mangel. Ex. 3 at 22-23. The records from these visits are again almost entirely illegible. The legible portions of the records, however, make no mention of left shoulder pain or complications with the 2019 vaccination. *Id*.

No additional treatment records have been filed.

### 2. Petitioner's Declarations

Petitioner submitted two sworn declarations in support of her claim. *See* Ex. 1, 11. Petitioner stated that she experienced immediate pain upon receiving a flu vaccine on August 13, 2019, and that she experienced symptoms of her left shoulder injury within 48 hours of receipt of the August 13, 2019 influenza vaccine. *Id*. at 2, 3. She further stated that her symptoms persisted to the date of the affidavit. *Id*. at 3.

In a supplemental declaration, Ms. Trusko stated that during the 16-month treatment gap identified above, she "also experienced a recurrence of some older injuries, including my knee and hands… did not discuss my left shoulder with them because we were focused on my other conditions at the time." Ex. 11 at 2.

## III. Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## Analysis

Petitioners not asserting a vaccine-related death or other injury requiring a surgical intervention and inpatient care must demonstrate that they suffered the residual effects or complications from their vaccine-related injury for more than six months. Section

11(c)(1)(D); *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011). Petitioners bear the burden of establishing this preponderantly. *Song v. Sec'y of Health & Hum. Servs.*, 31 Fed. Cl. 61, 65–66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 1994). They cannot establish the length or ongoing nature of an injury solely through personal statements but rather must "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . ." *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995), aff'd, 93 F.3d (Fed. Cir. 1996).

While even mild symptoms that do not require intensive medical care may satisfy the severity requirement, ongoing medical treatment for conditions unrelated to an alleged vaccine injury do not. *Compare Wyatt v. Sec'y of Health & Hum. Servs.*, No. 14-706V, 2018 WL 7017751, at *22–23 (Fed. Cl. Spec. Mstr. Dec. 17, 2018) (petitioner's post-vaccination GBS resolved within three months; subsequent ongoing medical treatment for upper respiratory and gastrointestinal infections did not satisfy six-month requirement), with *Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (ongoing mild GBS symptoms that did not require active medical care nevertheless satisfied severity requirement).

In his Rule 4(c) Report, Respondent argues that Petitioner cannot establish by preponderant evidence that she suffered the residual effects of her alleged left shoulder injury for more than six months after the August 2019 vaccination. Respondent's Report at 3-4. Because Ms. Trusko received the vaccination at issue on August 13, 2019, she must demonstrate that her shoulder symptoms lasted through at least February 13, 2020.

As noted in the Rule 4(c) Report, Petitioner saw her PCP for left shoulder pain treatment within three weeks of the vaccination. Ex. 10 at 6. She continuously treated her shoulder injury for the next three months. As of the end of the initial post-onset six month period (mid-February 2020), however, Petitioner's most recent prior complaint of left shoulder pain had occurred three months before, with no more immediate follow-up. Ex. 3 at 32. And then there was a subsequent 16-month gap in treatment. During this time, Ms. Trusko saw various medical providers on six separate instances, yet the records from those visits mention neither left shoulder pain nor complications with the relevant vaccination. *See,* e.g, Ex. 3 at 17, 18, 19, 20; Ex. 5 at 30-32, 33-34.

Petitioner has not attempted to explain this 16-month gap in treatment, nor has she explained why she failed to report her symptoms at the six intervening visits. Left arm pain would have seemed a particularly relevant symptom to disclose when treating with an orthopedist for bilateral hand pain. Ex. 5 at 30; *see also* Ex. 3 at 20 (noting complaints of bilateral carpal tunnel syndrome).

After the lengthy treatment gap, Ms. Trusko was seen for her shoulder injury, where she was found to have mild subacromial subdeltoid bursitis. Ex. 3 at 31. But the orthopedist opined that "[t]he *findings are not caused by the flu shot* but may have initiated an inflammatory cascade making these findings more symptomatic." *Id.* (emphasis added). Thus, while it is possible that Ms. Trusko's later shoulder symptoms may have been connected to her earlier symptoms, the existing record lacks preponderant evidence connecting those symptoms. Sixteen months is too long of a gap of time to make a connection in this specific situation.

The sworn declarations do little to cure the evidentiary deficiencies with respect to severity. The facts in this case are similar to *Black v. Sec'y of Health & Human Servs*, No. 21-009V, 2023 WL 4446500 (Fed. Cl. Spec. Mstr. May 22, 2023). The *Black* petitioner received a flu vaccine in his left shoulder and then suffered documented shoulder pain for approximately three months, from October 31, 2019, to January 29, 2020. *Id*. at *1. Mr. Black had an appointment with his urologist for an unrelated condition in March 2020, during which "[n]o comment was made about shoulder pain." *Id*. at *2. Thereafter, the petitioner did not seek treatment for his left shoulder again until July 7, 2021, more than 17 months after his last appointment for treatment of his shoulder. *Id*. In that case, I explained that, although in many cases I had allowed that,

> the intervention of the Pandemic can reasonably be understood to have caused individuals to put off treatment, especially in the spring of 2020, the gap in this case is too large to be excused for this reason – especially since Petitioner's cessation of treatment began in late-January 2020, and thus somewhat before the real initial impact of the Pandemic began.

Here too, the 16-month gap in the record during which time Ms. Trusko did not seek medical care for her allegedly persistent left shoulder pain "[was] too large to ignore" for her claim to meet the six-month severity requirement. A petitioner cannot establish the length or ongoing nature of an injury solely through personal statements but rather must "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . ." *Black v. Sec'y of Health & Hum. Servs*., 33 Fed. Cl. 546, 550 (1995), aff'd, 93 F.3d (Fed. Cir. 1996). Ms. Trusko had three months and two days of documented treatment for left shoulder issues, followed by no mention of shoulder pain for the next 16 months. This is an insufficient basis for a finding that Ms. Trusko suffered the residual effects or complications of her alleged left-sided SIRVA for more than six months after administration of the flu vaccine.

## Conclusion

Based on the entire record in this case, I find that Petitioner has failed to prove by preponderant evidence that her injury or its residual effects lasted more than six months. Accordingly, Petitioner has not established entitlement to an award of damages (under the Table or causation-in-fact version of the claim), and I must DISMISS the claim.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[3]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.